COPY

| | |
|---|---|
| 1 | Francis J. Higgins |
| | Michael J. Abernathy |
| 2 | Margaret A. McGreal |
| | BELL, BOYD & LLOYD |
| 3 | Three First National Plaza |
| | Chicago, Illinois 60602 |
| 4 | Telephone (312) 372-1121 |

____ Priority
_X_ Send
____ Clsd
____ Enter
____ JS-5/JS-6
____ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT
JUN 23 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Steven J. Freeburg
FREEBURG, JUDY & NETTLES
600 South Lake Avenue
Suite 500
Pasadena, CA 91106
(626) 585-4150

Attorneys for Defendant
UNDERWRITERS LABORATORIES INC.

10

11           UNITED STATES DISTRICT COURT
12         FOR THE CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
13

| | | |
|---|---|---|
| 14 | NORA LIGHTING, INC. | ) CASE NO. CV 99-12066 (RSWL) |
| 15 | Plaintiff, | ) [~~PROPOSED~~] |
| 16 | | ) FINDINGS OF FACTS |
| 17 | v. | ) AND CONCLUSIONS OF LAW |
| | | ) IN SUPPORT OF UNDERWRITERS |
| 18 | UNDERWRITERS LABORATORIES | ) LABORATORIES INC.'S MOTION |
| | INC., and INNOVATIVE | ) FOR SUMMARY JUDGMENT |
| 19 | TESTING LABORATORIES | ) |
| 20 | Defendants. | ) |
| 21 | | ) |

22        Pursuant to Fed. R. Civ. P. 56 and Local Rule 7.14, the Court hereby enters these
23 Finding of Facts and Conclusions of Law in Support of Underwriters Laboratories Inc.'s ("UL")
24 Motion for Summary Judgment.
25
26                    ENTERED ON ICMS
27                       JUN 26 2000
28                          CV

323947/C/1 9SBB01

# STATEMENT OF UNCONTROVERTED FACTS

## Introduction

1. On November 19, 1999, Nora Lighting, Inc. ("Nora") filed a complaint against UL alleging negligence (Second Cause of Action) and negligent inspection (Fourth Cause of Action). Nora also named Innovative Testing Laboratories ("ITL") as a defendant.

2. On April 17, 2000, UL moved for summary judgment. As announced on May 15, 2000, this Court grants this motion as to the negligence claim and, pursuant to Fed. R. Civ. P. 56(f), denies it without prejudice as to the negligent inspection claim. With respect to the negligence claim, the Court makes the following findings of fact and conclusions of law.

## UL's Certification System

3. UL is an independent, not-for-profit corporation that tests products to determine compliance with UL's published certification requirements. (DX 8, Compl. ¶¶ 5, 8).[1]

4. UL owns a number of certification marks, including the famous "UL in a circle" and "Underwriters Laboratories Inc." marks (collectively, "UL Mark" or "UL Marks"). (DX 1; DX 9, Answer ¶ 5).

5. One of the services UL provides is product "Listing" or certification. Manufacturers may seek UL Listing by submitting product samples for evaluation by UL engineers. (DX 8, Compl. ¶ 9).

6. As part of the UL Listing process, UL often requires manufacturers to complete a UL "Application" and return it to UL along with representative samples of the products to be manufactured. (*Id.* ¶ 10). UL will then evaluate and test those samples to determine whether they meet UL's certification requirements. (*Id.* ¶ 10). If they do, UL will issue a "Test Report,"

---

[1] "Compl." refers to Nora Lighting's Complaint; "Answer" refers to Nora Lighting's "Response to Counterclaims of Underwriters Laboratories Inc. and Affirmative Defenses."

detailing the results of its evaluation, and a "Notice of Completion of Investigation and Authorization to Apply the UL Mark" ("Authorization Letter"), allowing the manufacturer to apply the UL Mark to products complying with UL's requirements. (*Id.* ¶ 11). Only UL may authorize the use of the UL Mark. (*Id.* ¶ 9; DX 10, Crane Decl. ¶ 14).

**UL's Follow-Up Service Agreement With Nora Lighting**

7. Before any Listing, UL requires manufacturers to enter into a Follow-Up Service Agreement ("FUS Agreement"), which defines the terms and conditions under which they may use the UL Mark. (DX 2; DX 10, Crane Decl. ¶ 16).

8. A Subscriber may not use the UL Mark without first having signed a FUS Agreement. (DX 2 at p. 1; DX 10 ¶ 16). UL will not inspect a product unless the Subscriber has entered into a FUS Agreement. (DX 2; DX 10 ¶ 18).

9. On July 1, 1991, Nora Lighting signed a FUS Agreement with UL. (DX 2; DX 9, Answer ¶ 10).

10. The FUS Agreement applies to any company "that has entered into a relationship with UL . . . ." (DX 2 at p. 1). In particular, the FUS Agreement refers to Nora as a UL "Subscriber." (Id.) (emphasis added).

11. The FUS Agreement does not limit a Subscriber's responsibilities to "covered products." It specifically states a Subscriber

> *shall not use such a Mark* nor in any other way make use of UL's name, abbreviations, or symbols, or any other form or reference which may be interpreted to mean Underwriters Laboratories Inc., *on or in connection with products not covered* by the Service and authorized by the Procedure, or *products not made in compliance with the Procedure and other requirements of UL.*

(Id. ¶ 2) (emphasis added).

12. The FUS Agreement applies "to all covered products manufactured by the Subscriber or covered in UL's published records under the Subscriber's name or upon its Application." (*Id.* ¶ 33). A Subscriber's obligations under that contract apply "without regard to its specific relationship to UL . . . ." (*Id.* at p. 1).

13. The FUS Agreement requires Nora Lighting to submit to periodic factory inspections by UL Field Representatives. (DX 2; DX 10, Crane Decl. ¶ 17). UL may "periodically" inspect Nora Lighting's facilities to "determine compliance with UL's requirements." (DX 2 ¶ 16). Nora Lighting must "provide free access" to its facilities and equipment necessary for UL to conduct this investigation. (*Id.* ¶ 18). If UL discovers a non-compliant product, UL may direct Nora Lighting to "correct such items or remove the UL Mark . . . ." (*Id.* ¶ 19).

14. Under the FUS Agreement, these inspections "serve only as a check on the means which the Manufacturer exercises to determine compliance of the products with the requirements of UL, and that the [Manufacturer] is in no way relieved of his responsibility for the products." (*Id.* ¶ 15).

15. The FUS Agreement also provides that Nora Lighting "assumes full and complete responsibility for its use of the Mark and agrees that it will, through proper inspection or otherwise, determine that the products bearing the Mark have been made in compliance with the requirements of UL. The Subscriber agrees that its use of the Mark constitutes its declaration that the products are covered by UL and have been made in compliance with the requirements of UL." (*Id.* ¶ 10).

16. In the FUS Agreement, Nora Lighting explicitly agreed "that the Service of UL, and any sampling, inspections or tests conducted by UL in connection therewith, is designed to

serve only as a check on the means which the Manufacturer exercises to determine compliance of the products with the requirements of UL, and that the Subscriber [Nora Lighting] is in no way relieved of [its] responsibility for the products." (*Id.* ¶ 15).

17. In addition, the FUS Agreement specifically limits UL's responsibilities to third parties: "The Subscriber agrees that UL in performing its functions in accordance with its objects and purposes does not assume or undertake to discharge any responsibility of the Subscriber to any other party or parties." (*Id.* ¶ 8).

18. The FUS Agreement continues until terminated: "This Agreement shall continue in effect for a period of one year from the date first above written and shall automatically be renewed hereafter for periods of one year, unless the termination rights provided for in this Agreement are exercised." (*Id.* ¶ 32).

19. Nora Lighting has never exercised its termination rights. (DX 10, Crane Decl. 22; DX 9, Answer ¶ 75).

**ITL Counterfeits UL Certification Documents.**

20. In 1997, Nora Lighting hired ITL to represent it for the submission of certain Nora Lighting recessed lighting fixtures ("Recessed Fixtures") to UL for certification. (DX 8, Compl. ¶ 16; DX 11, Farzan Dep. at 22; DX 17, Farzan ITL Decl. ¶ 2).

21. On January 27, 1998, ITL requested that UL send it Applications for the Recessed Fixtures. (DX 12). ITL never returned the Applications or submitted testing samples to UL. (DX 8, Compl. ¶ 79; DX 10, Crane Decl. ¶ 11-12).

22. Accordingly, UL did not evaluate the Recessed Fixtures or authorize Nora Lighting to apply the UL Mark to those products. (DX 10, Crane Decl. ¶ 11). ITL did not obtain proper UL Listing. (DX 8, Compl. ¶ 79).

23. On May 17, 1998, ITL faxed to Nora Lighting a counterfeit UL Authorization Letter. (*Id.* ¶¶ 23, 71-72, 75-76, 79; DX 9, Answer ¶ 24; DX 1).

24. On May 26, 1998, ITL faxed to Nora Lighting counterfeit UL Test Reports for the Recessed Fixtures. (DX 8, Compl. ¶¶ 17, 71-72, 75-76, 79; DX 16).

25. UL had not prepared or approved those documents. (DX 10, Crane Decl. ¶ 13).

26. Nora Lighting alleges it began producing and marketing the Recessed Fixtures in reliance on this material. (DX 8, Compl. ¶ 25; DX 11, Farzan Dep. at 55).

27. Nora Lighting alleges ITL violated UL's policies and procedures regarding those products. (DX 8, Compl. ¶ 37, 71-72, 75-76, 79). Specifically, Nora Lighting admits its agent, ITL, "never even sent the testing samples to UL" (*Id.* ¶ 79), "improperly follow[ed] UL's standards procedures" (*Id.* ¶ 37), made "false representations" (*Id.* ¶ 79), and "failed to obtain proper UL certification for the Recessed Fixtures." (*Id.* ¶ 75).

28. On August 26, 1999, a UL Field Representative, David Schaub, visited Nora Lighting's facilities to inspect certain products. (DX 9, Answer ¶ 26). When Mr. Schaub requested information on the Recessed Fixtures, Nora Lighting provided him with the Test Reports and Authorization Letter sent to Nora Lighting by ITL. (*Id.* ¶ 26; DX 8, Compl. ¶ 26).

29. In October 1999, UL sought and obtained a Temporary Restraining Order enjoining ITL from counterfeiting and infringing the UL Mark. *See Underwriters Laboratories Inc. v. Innovative Industries of Tampa, Inc., d/b/a Innovative Testing Laboratories*, No. 99 C 6485 (N.D. Ill. Oct. 4, 1999) (Temporary Restraining Order) (DX 7; DX 9, Answer ¶ 32). UL also requested Nora Lighting to remove the UL Mark from products UL had never evaluated or certified. (*Id.* ¶ 35).

## CONCLUSIONS OF LAW

1. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

2. The parties agree the substantive law of California applies to the underlying motion.

**The Economic Loss Doctrine**

3. Under the economic loss doctrine, a plaintiff may not recover tort damages for a claim that is essentially contractual in nature. *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 44 Cal.Rptr.2d 420 (1995). In *Freeman*, the California Supreme Court adopted a "general rule precluding tort recovery for noninsurance contract breach . . . ." *Id.* 11 Cal.4th at 102, 44 Cal.Rptr.2d at 430-31.

4. Important distinctions between contract and tort remedies, "including the need for 'predictability about the cost of contractual relationships,' and the purpose of contract damages to compensate the injured party rather than punish the breaching party" underlie this doctrine. *Freeman*, 11 Cal.4th at 93 (citation omitted).

5. Limiting contractual damages "serves to encourage . . . commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." *Id.* at 95. According to the California Supreme Court, "[i]f the rule were otherwise, then any party attempting to defend a disputed contract claim would risk at the very least, exposure to the imposition of tort damages and an expensive and time-consuming expansion of the litigation into an inquiry as to the motives and state of mind of the breaching party." *Id.* at 97 (citation omitted).

6. In addition, allowing tort damages for a breach of contract would inappropriately interject judicial discretion into business decisions:

> Perhaps most troubling, the willingness of courts to subordinate voluntary contractual arrangements to their own sense of public policy and proper business decorum deprives individuals of an important measure of freedom. The right to enter into contracts – to adjust one's legal relationships by mutual agreement [ ] is too easily smothered by government officers eager to tell us what's best for us.

*Id.* at 99, *citing Oki America, Inc. v. Microtech Int'l, Inc.* 872 F.2d 312, 316 (9th Cir. 1989) (Kozinski, J.) (concurring opinion).

7. The California Supreme Court recently confirmed a plaintiff may not recover for a "mere negligent breach of contract." *Erlich v. Menezes*, 21 Cal.4th 543, 552, 87 Cal.Rptr.2d 886, 891 (1999).

8. In *Erlich*, the Supreme Court concluded parties may recover in tort *only* when "the duty that gives rise to tort liability is either *completely independent* of the contract or arises from conduct which is both intentional and intended to harm." *Id.* (emphasis added).

9. "An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty." *Id.* at 551.

10. This "[r]estriction . . . serve[s] to protect the 'freedom to bargain over special risks and [to] promote contract formation by limiting liability to the value of the promise.'" *Id.* at 553, *citing Freeman*, 11 Cal.4th at 98.

11. "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich*, 21 Cal.4th at 551, 87 Cal.Rptr.2d at 891 (citation omitted). In particular,

> a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as *fraud or conversion*; (2) the means used to breach the contract are tortious, involving *deceit or undue coercion*; or (3) one party *intentionally* breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.

*Id.* (emphasis added).

12. "[M]ore than mere negligence has been involved in each case where tort damages have been permitted." *Id.* at 893. As the California Supreme Court explained, "[f]ocusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated." *Id.*

13. Since UL's duty to Nora Lighting arises out of the FUS Agreement, Nora Lighting may not recover tort damages. *Freeman*, 11 Cal.4th at 102, 44 Cal.Rptr.2d at 430-31; *Erlich*, 21 Cal.4th at 552, 87 Cal.Rptr.2d at 893. Accordingly, summary judgment against Nora Lighting's Second Cause of Action is appropriate.

Dated this 23rd day of June, 2000.

*RONALD S W LEW*

_____
The Honorable Judge Richard S. W. Lew
United States District Court

323947/C/1 9SBB01_                                9

## CERTIFICATE OF SERVICE

I hereby certify that I (1) am an attorney admitted to appear before this Court and (2) caused a true and correct copy of the foregoing Proposed Findings of Facts and Conclusions of Law in Support of Underwriters Laboratories Inc.'s Motion for Summary Judgment to be sent to the following individuals:

Gregory B. Wood
OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East
Suite 3800
Los Angeles, CA 90067

via overnight mail this 23rd day of May 2000.

_[signature]_
One of the Attorneys for Defendant
Underwriters Laboratories Inc.